NOLL & THOMPSON *v.* CUMBERLAND PLATEAU RAILROAD.
CO.

(*Nashville.*   December Term, 1903.)

1. **PLEADING AND PRACTICE.** Every intendment made in.
   favor of a bill upon demurrer to it.
   It is a well settled rule that upon a demurrer to a bill, the ben-
   efit of every intendment will be made in favor of the bill as a.
   pleading.   (*Post, pp.* 142.)

2. **RAILROADS.** Contractor's lien for construction or repair of·
   roadway is enforceable in chancery court,
   The principal or original contractor is entitled to a lien on a
   railroad, its franchises or property, for construction or repair·
   of the railroad roadway and appurtenances, and may enforce
   his such lien in the chancery court.   (*Post, pp.* 142-147.)

   Acts cited and construed:   1883, ch. 220; 1891, ch. 98.

3. **SAME.** Objection to subcontractor's notice of lien cannot be·
   made for first time on appeal.
   The defects in a subcontractor's notice to a railroad of his lien
   for construction or repair of its roadway, or the absence of such
   notice, may be waived; and the same is waived by not making.
   any objection or defense in the court below, because of the
   defect in such notice or the absence thereof, for the objection·
   can not be made for the first time on appeal in the court of·
   chancery appeals or in the supreme court.   (*Post, pp.* 149-150.)

   Cases cited and approved:   Railroad v. Miller, 80 Va., 821;
       Wheeler v. Ralph, 4 Wash., 617; Fire Extinguisher Co. v. Car-
       pet Works, 199 Pa., 647; Holmes v. Budd, 11 Iowa, 186.

Noll & Thompson v. Railroad.

·4. **SAME.** Same. Case in judgment.

Where a subcontractor's notice to a railroad and his original bill claims a lien for $13,000 only, but by an amended bill a claim is made for $23,000, and a lien for that amount is sought to be enforced, which bills were answered by the railroad without making any question upon the notice, the question can not be made for the first time upon appeal, and the lien may be enforced for the amount found to be due under the bill as amended. (*Post, pp.* 147-150.)

·5. **STATUTES.** Original to be read as containing amendments, when.

When a statute is amended by a subsequent statute, the original act is to be read as if it contained the provisions of the amendatory act, as to all authorized actions occurring after the enactment of the amendatory statute. (*Post, pp.* 145-146.)

FROM CUMBERLAND.

Appeal from the Chancery Court of Cumberland County.—D. L. LANSDEN, Chancellor.

PRITCHARD & SIZER and OWINGS & NICHOLAS, for complainants.

JOHN F. McNUTT, J. W. DORTON, and L. D. SMITH, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The bill in this cause was filed in the chancery court of Cumberland county by complainants, who, as contractors, did a large amount of work in the construction of the roadway of the defendant company, to enforce a lien for the balance alleged to be due for this work. A demurrer was interposed by the railroad company, in which it was insisted that the bill showed upon its face that complainants were principal contractors with the defendant corporation, and that, being such, under chapter 220, p. 296, of the Acts of the legislature of 1883, the circuit court had exclusive jurisdiction of their claim. This demurrer was overruled, and the action of the chancellor in this respect, and of the court of chancery appeals in affirming his decree, is made the basis of the first assignment of error in this cause. Upon examination of the bill, we find that there is a degree of ambiguity in its averments as to the exact relation between the complainants and the defendant company; that is, whether, in doing the work, complainants were original or subcontractors. In this state of the pleading, however, we think, under the well-settled rule which gives the benefit of every intendment to the pleader, it must be held that it is susceptible of the construction insisted on by the demurrant. Conceding, then, that their bill is filed as contractors direct with the defendant company, the question is, have they made a mistake in selecting a forum for the adjudication of their claims?

Chapter 220, p. 296, of the Acts of 1883, is entitled "An act to protect contractors, subcontractors, mechan-

Noll & Thompson v. Railroad.

ics, laborers and engineers who perform work or fur-
nish materials for the construction or repair of rail-
roads." By the first section, to every person who con-
tracts with a railroad company for any work done or
material furnished in the construction of its road and
appurtenances a lien is given in his favor upon the prop-
erty of the railroad, and by section 2, p. 297, it is enacted
that the lien thus created may be enforced by a suit
against the railroad company in the circuit court of the
county or district where the work, or some part thereof,
was done, or the material, or some part thereof was
delivered. Section 3, p. 297, of the act, provides
that subcontractors, mechanics, laborers, or other per-
sons employed by the principal contractor in doing any
part of the work on the railroad, or a materialman who
furnishes material for such work, shall have a lien from
the date that the work is done or materials furnished,
where the principal contractor refuses payment of their
claims, and, upon giving notice in writing to the rail-
road company, such person has a prior and superior lien
on the amount due from the railroad company to the
principal contractor, which continues for ninety days
from the date of the service of the notice, and until the
termination of any suit commenced within the time to
enforce it, either in the circuit court, or before any jus-
tice of the peace of the county having jurisdiction of the
amount involved:

So, it is apparent, if complainants rested their claim
alone on the act of 1883, the bill was clearly demurrable,

as under that act the chancery court had no jurisdiction to enforce such a lien, whether it be a principal or a subcontractor's lien. It is evident, however, that parties engaged in doing work in the construction of railroads were not satisfied with this act, and so in 1891 an amendatory act was passed; it being chapter 98, p. 215, of the published acts of that year. This act is entitled "An act providing a prior lien for and giving greater security to contractors, subcontractors, laborers, materialmen, engineers and all other persons rendering valuable and necessary services, professional or otherwise, in the erection, construction, repairs and equipping of any railroad in this State, and to amend chapter 220 of an act passed March 29, 1883, entitled: 'An act to protect contractors . . . who perform work or furnish materials for the construction or repair of a railroad.' " The title indicates a purpose on the part of the legislature to cover the whole field of railroad construction work, and provide a remedy for all classes of persons engaged in such work. Section 1 of the act amends section 3 of the act of 1883, and provides a lien for "every subcontractor, laborer, materialman or other person who performs any part of the work on a railroad roadway." The lien thus given is on "the railroad, its franchises or property," whereas, under the section amended, there existed a lien in favor of such persons only upon the amount due the principal contractor from the railroad at the time notice was given. Section 2 enacts that the lien provided for in the act may be enforced by a

Noll & Thompson v. Railroad.

suit either in the circuit or the chancery court. Section 3 provides "that the plaintiff shall set out in his declaration or bill, as the case may be, . . . the work done, services rendered, or material furnished, the amount claimed therefor, the nature and substance of any contract made with such railroad company or any contractor or construction company or subcontractor, as the case may be." While it is true that neither this last section, nor any other section in this act, provides a lien for the person who contracts directly with the railroad company, yet it would seem that the necessary implication of the terms used in the caption and in section 3 is that the principal contractor was within the intent of the legislature in the passage of this act. That he was, we have no doubt and that he is protected to the same extent as are all other persons, when the original and amendatory act are read together, we think, is beyond all serious question. These two acts, when taken as a whole, accomplish the legislative intent, and furnish a remedy for every person doing work or furnishing material in railroad construction, whether the contract under which the work was done or the materials furnished was made with the railroad, or with one who had such a contract. That they must be read together, and as a whole, is well settled by all the authorities.

Mr. Black, in his excellent work on the Intrepretation of Laws, section 130, says: "An amendment of a statute by a subsequent act operates precisely as if the subject-

112 Tenn—10

matter of the amendment had been incorporated in the prior act at the time of its publication, so far as regards any action had after the amendment is made. For it must be remembered that the amendment becomes a part of the original act, whether it be the change of a word, figure, line, or entire section, or a recasting of the whole language." The author cites many cases in support of his text, which it is unnecessary to refer to, as we regard it as a settled canon of intrepretation that, within proper limitations, the two acts are to be read as one; i. e., the original act is to be read as if it contained the provisions of the amendatory act, as to all authorized actions occurring after the passage of the latter. Sedgwick on the Construction of Statutory and Constitutional Law, p. 68; Sutherland on Stat. Constr. section 133.

So we have, reading these acts as a whole, an original contractor provided for by section 1 of the act of 1883, with section 2 of the amendatory act giving such contractor, as all other parties embraced within it, the right to enforce his lien by resorting either to the circuit or the chancery court.

This interpretation gives full scope to the legislative intent in enacting an amendatory statute as declared in its caption already set out. We think to hold that a principal contractor was confined to the circuit court, while every subcontractor doing work on or for the railroad could resort to that court or the chancery court, at his option, would be an anomaly, in view of the two

acts and the rule of intrepretation referred to, which we are not called upon to create or enforce.

This holding, we think, disposes of the whole case. But granting, however, as is assumed by the defendant, that the court of chancery appeals finds upon the evidence in the case that the complainants were not principal contractors, but subcontractors of the Cumberland Construction Company, which had a contract with the railroad company for doing the work, which was sublet to the complainants, then such finding raises the next assignment of error. Under section 1 of the act of 1891, notice by a subcontractor must be given within ninety days after the completion of the work done by him for the railroad company that a lien for the work so done is claimed; specifying in the face of the notice the character of the work done, and the value thereof. The court of chancery appeals finds that complainants gave the notice required by this section, but in doing so erroneously stated that the balance due for such work was about $13,000. The original bill filed by complainants contained the same erroneous statement. Subsequently, by leave of court, an amended bill was filed, in which it was sought to correct this error; and in this it was alleged that the balance due was the sum of $23,000 instead of $13,000, and the court was asked to enforce a lien on the railroad property for that amount, with interest upon it. The original and amended bills were answered by the defendant, the railroad company, in which it denied any indebtedness whatever to the com-

plainants, save in the sum of about $1,800, which it tendered and paid into the court. In these answers no question was made upon the notice. For the first time, an objection was made in the court of chancery appeals that, whatever might be the claim of complainants, yet they were bound to the terms of their notice, so that no recovery could be made by them in excess of the sum of $13,000, which they had stated in this notice to be the amount due them. The court of chancery appeals held that this objection came too late, and, finding an amount in excess of that claimed as originally due, pronounced a decree for the amount really due; and its action in this regard, it is insisted, was error.

We think there was no error in this. The object of the notice required by the statute is to apprise the railroad company of the amount claimed, and thus put it in a position where it can protect itself against overpayments to the original contractor. While it performs this important function, yet, like any other benefit, it may be waived by the party in whose interest it is created. And a waiver can very well be assumed unless a timely objection is made to the notice. Such objection, we think, comes too late when made for the first time on appeal. In *Shenandoah Valley Railroad Co.* v. *Miller*, 80 Va., 821, it was insisted in the supreme court that there was no lien, because notice required by the statute was not served on the proper person, and the notice itself defective, because it did not contain a correct statement of the amount due the subcontractor

from the principal contractor, as required by the statute. The court said that neeither objection could be maintained, because not raised in the court below. Said the court: "If the company desired to rely upon them, it should have brought them to the attention of the circuit court, and, not having done so, clearly it is now too late to raise them here. The object of the notice is to apprise the owner of the subcontractor's claim, and to warn him against making payment to the general contractor, and if the notice be for any reason defective, or if it be not properly served, it is the undoubted privilege of the owner, in a suit or action against him by the contractor, to defend on that ground; but these defects or objections he may waive, as in the present case was done, by . . . not objecting in the circuit court to the introduction in evidence before the jury of a copy of the written notice served by the plaintiff, with the return thereof, and, having thus waived them, their right to insist upon them now is gone."

To the same effect are *Wheeler, Osgood & Co.* v. *Ralph,* 4 Wash., 617, 30 Pac., 709; *Fire Extinguisher Co.* v. *Carpet Works,* 199 Pa., 647, 49 Atl., 366; *Holmes* v. *Budd,* 11 Iowa, 186.

But it is insisted for the appellant that the objection to the notice raises not merely a question of its sufficiency, but goes to the point that there was no notice that complainants claimed a lien for the difference between the amount stated in the notice and the amount decreed in their favor by the courts below.

It is obvious, however, that the objection is at last based on the proposition that the notice was not sufficient to entitle complainant to a lien for the full amount claimed in the amended bill. This objection, however, was one which the defendant could avail itself of in its answer to the amended bill. Having failed to do it then, we think it must be taken that it waived its right to make such objection, and will not be allowed to raise it after the cause had reached this court.

We think that neither assignment of error by the defendant company is well taken, and the decree of the court of chancery appeals is therefore affirmed.