THE FOURTH & FIRST BANK & TRUST COMPANY, for the use of THE NASHVILLE TRUST COMPANY v. THE STANDARD ACCIDENT INSURANCE COMPANY.

Middle Section.   April 12, 1930.

P. D. Maddin, John K. Maddin and Lowe Watkins, of Nashville, for plaintiff in error, Trust Co.

Hume & Armistead, of Nashville, for defendant in error, Ins. Co.

CROWNOVER, J. This was an action upon a bond of indemnity, insuring the Bank & Trust Company against loss by any act of fraud or dishonesty committed by its employees.

The Insurance Company refused to pay the amount of the loss and filed four pleas: (1) the contractual limitation, in that the loss was not discovered until after one year had expired after the termination of the bond, as contracted; (2) nil debet; (3) non assumpsit; (4) that notice was not given within ten days after discovery of the loss as required by the bond—which pleas raise only two defenses: (1) that the loss was not discovered within one year after the termination of the bond; and (2) notice was not given within ten days after discovery of the loss, as required by the bond.

The case was tried by the judge without a jury, and resulted in a judgment for the Insurance Company, and the action was dismissed. At the trial, on request of the plaintiff below, the court made a written finding of facts, and the plaintiff requested the court to find additional facts, which request was refused.

The motion for a new trial was overruled, and the plaintiff has appealed in error to this court, and has assigned fourteen errors, which, when summarized, raise four propositions:

(1) The court erred in allowing defendant to amend its pleas at the trial, during argument, so as to plead the plaintiff's failure to give notice within ten days after the discovery of the embezzlement, as required by the bond.

(2) That the court erred in refusing to find the additional facts requested.

(3) That the court erred in not finding and holding that the loss sued for was discovered within one year after the termination of the bond, and therefore the defendant was liable on the bond.

(4) That the court erred in holding that the plaintiff's failure to give notice within ten days after the discovery of the loss forfeited the right of recovery.

The facts necessary to be stated are, that the Fourth & First Bank & Trust Company of Nashville was the successor of the First

Savings Bank & Trust Company. The Nashville Trust Company has now acquired all the property of the Fourth & First Bank & Trust Company.

The Bank had a number of branch banks, including one at Flat Rock, near the outskirts of Nashville. W. W. Nix was manager of the Flat Rock branch.

The Bank had obtained an indemnity insurance policy from the Standard Accident Insurance Company, of Detroit, in the sum $50,000, dated December 31, 1924, for one year, indemnifying the Bank against loss through any dishonest act of any of its employees.

The policy contained sections which provided that the bond should cover losses discovered. before the expiration of one year from the termination of the contract; that notice should be given the Company by letter or telegram not later than ten days after the discovery of any loss; and for proofs of loss within three months after such discovery.

On November 4, 1925, an employee of the Flat Rock branch informed the Bank's auditor that he suspected irregularities in Nix's accounts, as he noticed that deposits were going through and were being entered on the Bank's ledgers at later dates than shown in the customers' pass books.

Nix had worked for the Bank for several years and was a trusted employee. However, in view of this suspicion, the Auditor, accompanied by two other officials of the Bank, went out to the Flat Rock branch after banking hours on that date, counted the cash and checked up the notes and savings and checking accounts on the ledgers and found no irregularities. However, in view of the information given by the clerk, the Auditor gave Nix a vacation and left some of his men in charge of this branch with instructions to call in and take up all pass books so that the condition of this branch bank might be fully determined, the Auditor stating that he did not feel warranted in charging Nix with wrongdoing.

Those left in charge of the bank began taking in the pass books on November 5th, but found no shortage. On the morning of November 6th, Nix came in to the Bank and confessed he was short a considerable amount, and he turned in to the Bank a number of deposit tickets that he had been withholding in order to cover up the shortage.

His system of misappropriating money and yet keeping his accounts in balance was, when a deposit was made he would misappropriate the money and withhold the deposit slip without making an entry on the ledger, until it was necessary to account for this deposit, at which time he would likewise misappropriate other deposits which he applied to cover deposits heretofore taken, on which date he entered on his ledger the former deposit, thus keeping the books always balanced.

When he confessed to embezzlement on November 6, 1925, the bank officials knew that a shortage existed, and Nix was immediately discharged. The deficit caused by his embezzlement amounted to almost $30,000, and Nix turned over to the Bank a number of notes, some real estate and other property, which reduced the amount to less than $12,000.

On December 19, 1925, the Bank notified the Insurance Company of the loss. On February 27, 1926, the Bank sent the Insurance Company a detailed statement of the loss discovered up to that date, saying in their letter: "You will note that it appears that the total shortage discovered up to date, which we think is probably the entire amount, but other items may turn up, aggregate $11,733.21." The letter then went on to state that 416 accounts out of 1150 had been involved in his embezzlement, and that Nix forged checks against accounts in some instances as well as withholding credits on other accounts.

On May 17, 1926, the Insurance Company paid the amount of the loss reported to that date, $11,733.21.

The Bank made an effort to find all the depositors that had accounts with that branch bank and to call in all the pass books, but the addresses of some of the depositors were not known and could not be ascertained, and their pass books were not received. Some had moved away and had left no address, and a few pass books had not been located when the Bank made its report to the Insurance Company on May 17, 1926, and among them was the savings account of W. R. Jemison.

On November 4, 1926, the Bank received by registered letter from the Merchants & Farmers Bank of Meridian, Miss., the savings pass book of Jemison, together with a blank draft drawn on that branch in favor of W. R. Jemison, with request that the balance due Jemison with accrued interest be filled in and sent to that bank. The pass book showed a balance of $4064.12 as of September 1, 1924, the date of the last interest credited on the pass book. An examination of Jemison's ledger sheet showed that he had a balance of only $43.71 after interest credits were included. The ledger sheet showed a withdrawal of $2000 under date of October 19, 1925, and one of $2200 on October 20, 1925. Further investigations disclosed the fact that there were in the bank files two checks of the above amounts and dates, both payable to the order of cash and signed, apparently, by W. R. Jemison, in pencil, and marked "paid" by the Bank's stamp. These two checks had been charged against the account of Jemison on the ledger of the Bank but not on the depositor's pass book.

There was a rule of the Bank, which was printed in its savings pass books, as appears from Jemison's pass book, that the pass

book must accompany each check withdrawing money, so that proper entry might be made therein when the money was withdrawn, so that the pass book might at all times show the depositor's correct account.

Howard Moore had been placed at the Flat Rock branch as manager succeeding Nix, and during this period the Auditor and his assistants were checking Nix's accounts, and Moore knew that they were from time to time discovering shortages, either by the manipulations of the books and accounts, as heretofore stated, or by forgeries.

Further investigation showed that the signature card of Jemison was missing so that the signatures on these checks could not be compared with the original signature to determine whether they were genuine. And the manager at Flat Rock and the Auditor testified that they were satisfied after making the foregoing investigation on the morning of November 4, 1926, that this was another item of Nix's misappropriation, but it was decided, for safety, to put the burden of showing the embezzlement on Jemison and let him show that the checks were not genuine; hence the two checks were entered on Jemison's pass book and a check for $43.71 was mailed to the Merchants & Farmers Bank at Meridian. After some correspondence Jemison refused to accept the check and insisted that the two checks not entered on his pass book were forgeries.

In the meantime Nix returned to Nashville and on November 16, 1926, the Bank conferred with him about these checks and he admitted that they were forgeries.

On November 23rd the Bank received Jemison's affidavit that these checks were forgeries and it mailed its check to the Meridian Bank for $4428.44, payable to W. R. Jemison, in full settlement of his savings account.

On the day that Nix admitted that the two checks were forgeries, the Bank notified the Insurance Company of the loss. The Insurance Company requested more information, and on Dec. 4, 1926, the Auditor of the Bank wrote the Insurance Company in detail about the loss, in which letter he made the statement that when the manager of the Flat Rock branch found the two checks in the file he entered them on the pass book, "thinking that they were genuine."

The Insurance Company refused to pay this claim, on the ground that the loss was not discovered until November 18, 1926, which was more than one year after the first discovery of loss and the termination of the bond as to Nix, and was not covered by the bond.

The Bank brought this suit for the loss with interest and penalty.

At the trial, after all the evidence was in and plaintiff's argument was made, the defendant asked leave and was granted permission by the trial judge to file a fourth plea to the effect that the

plaintiff's claim was barred because notice of the loss was not given the defendant within ten days after the discovery.

The trial judge in his written finding of facts found that the bond terminated as to Nix on November 6, 1925, and that the bond covered losses caused by Nix, discovered within one year from that date; and that the second shortage was not discovered within a year· from that date, as the Bank did not have sufficient facts in its possession on November 4, 1926, to constitute a "discovery."

The trial judge further held that the failure to report the loss within ten days of discovery barred the claim sued on.

It should be stated that the defendant introduced no evidence at the trial, and there is no dispute about the existence of the bond or of the amount of Nix's shortage.

The first assignment of error to the effect that the Court erred in allowing the defendant to amend his plea so as to set up the defense that the plaintiff had failed to give notice of the discovery of the loss within ten days after the discovery, as required by the bond, is not well made, for the reasons:

(1) The plea is not inconsistent with the other defenses, and our courts are very liberal in allowing amendments at any stage of the proceedings that cases may be determined upon their merits. Caruthers History of a Lawsuit (5 Ed.), 176.

(2) Because the plaintiff did not except to the order allowing the amendment at the time it was made. It is too late to raise the question on motion for a new trial after the case has been tried and the verdict has been rendered where no exception has been made at the time. See 3 C. J., 792-3; Noll v. R. R., 112 Tenn., 140, 79 S. W., 380; Burnett v. Sams, 1 Tenn. Chy. App., 60.

It results that this assignment of error must be overruled.

The assignments of error that go to the proposition that the court erred in refusing to find additional facts, in view of chapter 94 of the Acts of 1929, become immaterial, as the trial on appeal of non-jury cases is de novo, even where written finding of facts and conclusions are requested, as provided in Shannon's Code, 4684.

The appellate courts have held that where such a request is made under that statute, the written finding of facts was conclusive on the appellate court if there was any evidence to support the finding. See Shannon's Code, 4684, and notes; Hinton v. Insurance Co., 110 Tenn., 113, 72 S. W., 118; Martin v. McCrary, 115 Tenn., 316, 89 S. W., 324; Schrader v. Light & Power Co., 157 Tenn., 391, 8 S. W. (2d), 495; Power Co. v. Robinson, 8 Tenn. App., 396.

And under that section the conclusions of law upon facts found were not conclusive on the appellate court. Schrader v. Light & Power Co., supra; Insurance Co. v. Witherspoon, 127 Tenn., 365, 155 S. W., 139.

But under the recent statute, chapter 94 of the Acts of 1929, in all cases tried by the Court of Appeals on appeal or otherwise the hearing is de novo where the case was tried in the lower court by the judge without a jury. Hence, in trials de novo the finding of facts, even though requested under the statute, Shannon's Code Sec. 4684, is not conclusive on this court otherwise than that "there shall always be a presumption of correctness in the appellate court as to the judgment of the trial court where the material evidence is nearly evenly balanced."

The assignments of error to the effect that the court erred in not finding and holding that the loss sued for was discovered within one year after the termination of the bond, must be sustained. The sections of the bond providing for the discovery and notice of the loss are as follows:

"Sec. 2. This bond covers losses which shall be sustained after noon, standard time at the Insured's main office of the date hereof and prior to noon, standard time as aforesaid, of the effective date of the cancellation of this bond as provided in Section 14 hereof, and which, in case of losses caused by any Employee or Employees as to whom this bond, prior to such cancellation, shall have terminated as provided in Section 15 hereof, shall be discovered before the expiration of one year from such termination, and in case of all other losses, before the expiration of one year from the date of such cancellation."

"Sec. 15. This bond shall terminate as to any Employee: (a) at noon, standard time as aforesaid, upon the effective date specified in a written notice served upon the Insured or sent by registered mail. Such date, if the notice be served, shall be not less than fifteen days after such service, or, if sent by registered mail, not less than twenty days after the date borne by the sender's registry receipt; (b) immediately upon discovery by the Insured of a default hereunder on the part of such Employee."

"Sec. 16. This bond is subject to the following express conditions:

At the earliest practicable moment, and at all events not later than ten days, after the Insured shall discover any loss hereunder, the Insured shall give the Underwriter notice thereof by registered letter or telegram, addressed to it at its home office, and shall also, within three months after such discovery, furnish to the Underwriter at its home office affirmative proof of loss with full particulars. Legal proceedings for recovery of loss hereunder shall not be brought prior to the expiration of three months from the furnishing of such proof, nor after the expiration of twelve months from the discovery of such

loss. If any limitation embodied in this paragraph is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.''

It is insisted for the plaintiff in error that the expression "discovery of default'' used in the bond above quoted, means the same as the expression used in cases where fraud is discovered, as where a cause of action is fraudulently concealed from the complainant the statute of limitations will not run until the complainant discovers the fraud, and the discovery in such instance means the knowledge of such facts as would lead a prudent man to inquiry. But we are of the opinion that the expression does not mean the same thing in both instances, as one is affected with knowledge of the concealment of a cause of action when he is put upon notice of facts that would lead a diligent person to inquiry, whereas the discovery of fraud or of default as used in this bond means the knowledge of facts and circumstances sufficient to satisfy a person of ordinary prudence that the default or conversion had been committed. "Discovering'' in this instance means: "To obtain for the first time knowledge of; to know or to be aware of; to find out." Moore v. Palmer (N. D.), 174 N. W., 95.

Applying this definition to the facts of this case, we are of the opinion that the bank officials discovered the embezzlement when the Bank received the letter from the Mississippi Bank on November 4, 1926. Both the Auditor and the manager of the Flat Rock branch testified that they were satisfied on November 4, 1926, when they received the pass book and draft from the Mississippi Bank, that this was another one of Nix's defalcations, and there is no evidence to the contrary except the statement in the Auditor's letter to the Insurance Company that they entered the two checks on the pass book, "thinking that they were genuine.'' But that statement does not estop the Bank where the real facts are otherwise. The party furnishing them may show that the statements in the proofs of loss were erroneous or inadvertently made, and the mistake can be shown by parol. Life & Casualty Insurance Co. v. Robertson, 6 Tenn. App., 59; Bacon on Life & Accident Insurance (4 Ed.), sec. 650.

It is insisted by counsel for the Bank that the statement in the letter was merely an inadvertence, and that the Auditor intended to say that it was necessary to treat the checks as genuine until they were proven to be forgeries, and that the Bank intended to throw the burden of the proof on Jemison.

We are of the opinion that the trial judge was correct in holding that the first discovery of the default was on May 6, 1925, and we are also of the opinion that the discovery of the embezzlement con-

nected with the Jemison account was made on November 4, 1926. It takes strong proof to satisfy one that a trusted employee, who has an excellent reputation, is guilty of embezzlement, but it does not take so much proof to satisfy one where the employee has admitted that he has been guilty of 416 embezzlements. Especially is this true where a large discrepancy is shown between the savings pass book and the ledger. In the absence of the signature card the checks would not necessarily confirm the ledger account; hence, taking all the circumstances together, we are of the opinion that a reasonable man would have been satisfied that he had discovered another embezzlement. Hence, this, assignment of error must be sustained.

The last assignments, that the court erred in holding that the plaintiff's failure to give notice within ten days after the discovery of the loss connected with the Jemison deposit barred a recovery, must be sustained, as the first notice of Nix's default was sufficient under the bond. The bond required notice within ten days after default and proofs of loss within three months after discovery. As above stated, notice of Nix's defalcation was furnished the Company on December 19, 1925, and the amount of shortage discovered up to May 17, 1926, was paid. The next shortage was the one connected with the Jemison deposit, discovered on November 4, 1926,. now in controversy.

Only one notice of default is necessary. It is not necessary to give notice of each item of default after each discovery. See Frost on Guaranty Insurance (2 Ed.), sec. 115; Fidelity & Deposit Co. v. Courtney, 103 Fed., 599, 608; Fidelity & Guaranty Co. v. Western Bank (Ky.), 94 S. W., 5-6; Surety Co. v. Pauly, 170 U. S., 133, 42 L. Ed., 977; Mitchell Grain Co. v. Maryland Casualty Co., 108 Kan., 379, 195 Pac., 978, 16 A. L. R., 1488, 1493.

The Insurance Company having paid part of the loss on that first notice without raising any question as to delay in giving that notice, is now estopped to raise the question about the delay in giving that notice. Westchester Fire Ins. Co. v. McAdoo (Tenn. Chy. App.), 57 S. W., 409.

An objection may be raised, under the plea of nil debet, that proofs of the loss connected with the Jemison deposit were not filed within three months as required by the bond. A sufficient reply to such an objection is that the proof of loss was furnished within three months after its discovery. Ignorance of the existence of the policy, or ignorance of the injury or loss, may excuse delay in the proofs of loss. 7 Cooley's Briefs on Insurance (2 Ed.), pp. 5919, 5921; Watkins v. Casualty Co., 141 Tenn., 583, 214 S. W., 78; Brown v. Travelers Insurance Co., 1 Tenn. App., 413.

Hence, the assignments must be sustained.

But we are of the opinion that the insistence made by plaintiff in error that notice of the loss under this bond was not a condition precedent, is not well made, as Section 16 of the bond states: "This bond is subject to the following express conditions: at the earliest practicable moment, and at all events not later than ten days, after the insured shall discover any loss hereunder," notice shall be given, etc. We think that notice was a condition precedent to liability. Phoenix Cotton Oil Co. v. Royal Indemnity Co., 140 Tenn., 438, 205 S. W., 128; Wolfe v. Insurance Co., 3 Tenn. App., 199; Head v. National Live Stock Insurance Co., 5 Hig., 180; 7 Cooley's Briefs on Insurance (2 Ed.), 6097.

The Insurance Company does not waive the failure to give notice by requesting the owner to furnish proofs of loss. Head v. Live Stock Insurance Co., supra.

Several of the assignments of errors having been sustained, it results that the judgment of the lower court must be reversed, and a judgment will be entered in this Court in favor of the Fourth & First Bank & Trust Co for the use of the Nashville Trust Co. and against the Standard Accident Insurance Co. for the sum of $4384.73 with interest from November 16, 1926, together with the cost of the cause including the cost of the appeal, for all of which let execution issue.

Faw, P. J., and DeWitt, J., concur.