King's, Inc., *v.* Maryland Casualty Co. *et al.*

(*Nashville*, December Term, 1935.)

Opinion filed Dec. 16, 1935.

MILLER, MILLER & MARTIN, of Johnson City, for appellant Maryland Casualty Co.

COX, TAYLOR & EPPS, of Johnson City, for appellant Mark C. Bane.

SIMMONDS & BOWMAN, of Johnson City, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought upon a fidelity bond issued to a concern known as H. P. King Company, the predecessor of complainant, covering Mark C. Bane, a managing officer of said H. P. King Company. The case has been before this court heretofore upon defendant's appeal from an order of the chancellor overruling its demurrer. The chancellor's decree was affirmed and the case remanded for trial upon its merits and there was a decree for complainant.

H. P. King Company had several stores, one located at Johnson City, of which Bane was manager. In the spring of 1929 the corporation became financially involved and

a creditors' committee was appointed to take charge of its affairs. This creditors' committee began to function in April or May, 1929.

Bane left the employ of the company in May, 1929. It appears to have been the intention of the creditors' committee to dispense with his services shortly and he anticipated their action.

Sortly before Bane left, in April, 1929, he drew three checks, and appropriated the proceeds. Two of the checks were for $750 each and one of the checks was for $3,750, the company's checks payable to himself.

These withdrawals were entered into the company's books at the time they were made and appeared as charges against Bane on the general ledger.

The Johnson City establishment was operated by the creditors' committee from April, 1929, until December 14, 1929, when a bill was filed in the federal court and a receiver appointed by that court for H. P. King Company, who took over the management of the corporation's affairs.

The receiver operated the store until April 15, 1930, when H. P. King Company filed a voluntary petition in bankruptcy. The assets of the Johnson City store were sold by the bankruptcy court to Sam R. Sells on May 21, 1930, and Sells and others bought out the complainant corporation, King's Inc., to which these assets were transferred by him.

Sam R. Sells seems to have been chairman or the active man on the creditors' committee, above mentioned. He testified, however, that he got no knowledge of these withdrawals of cash by Bane during the conduct of the business by that committee. Sells said that he first learned of these withdrawals when an auditor was em-

ployed by the new concern of King's, Inc., that the auditor called his (Sells') attention to Bane's aforesaid withdrawals. Thereupon Sells gave immediate notice to defendant Casualty Company.

Several defenses were interposed by the Casualty Company, perhaps the defense most strongly urged being that the insured had failed to give it timely notice of the wrongful abstraction or withdrawal of funds by Bane. The theory of the complainant's bill is that King's, Inc., as purchaser of the assets of H. P. King Company, acquired any right of action H. P. King Company had on this bond, and this theory is not challenged in this court.

The bond undertook to reimburse the employer (H. P. King Company) for losses "which the employer shall have sustained by reason of any act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction or willful misappropriation on the part of any employee named in the schedule hereto attached."

The bond further provided that "notice of such loss be sent by telegram and by registered letter, both addressed to the company at its home office, Baltimore, Maryland, within ten(10) days after the discovery of such loss."

There is no question but that Sam R. Sells, acting for the new company, gave the defendant Casualty Company adequate notice of the loss within ten days after the auditor informed Sells of Bane's abstractions. The contention of defendant Casualty Company is that H. P. King Company, or the creditors' committee, or the federal receiver, one or all of them, had knowledge of Bane's abstractions long before this auditor's report was made to Sells, that none of these parties gave the notice within

ten days of obtaining such knowledge, and that accordingly defendant was released from liability on the bond.

Without undertaking to review the authorities, it is sufficient to say that a liberal construction in favor of the employer is given to the provisions in fidelity bonds, executed by a compensated surety, requiring notice of an employee's misappropriations. That is to say, no great diligence is exacted of an employer to discover derelictions on the part of his employees covered by the bond, and we believe that no decision has exacted anything more than ordinary care of an employer in this particular. At the same time we think that no court would justify an employer in willfully shutting his eyes to an employee's dishonesty and in failing to report same if the employer expected to obtain redress on the bond.

The auditor employed by King's, Inc., a witness named Stone, testified that he was engaged to open the books of King's, Inc., and to enter the assets of the bankrupt corporation on the books of the new corporation. This auditor saw $5,265 charged to Bane on the general ledger of H. P. King Company, at once investigated the origin of this charge, and immediately found the three checks drawn by Bane to his own order. There appears to have been an item of $15, whose origin is not explained, also charged to Bane on this account.

Stone said that the account of Bane on which these checks were charged covered less than a page in the general ledger. That there were four or five other entries on it. That the account was not a salary account. That the account was not a stock account. That it was the only account on the books of H. P. King Company which showed withdrawals of any consequence by an employee of that concern. That the withdrawals were unusual and

at once attracted his (Stone's) attention. Stone immediately reported the matter to Sam R. Sells, and Sam R. Sells at once consulted with his attorney and gave notice of a claim on the bond to defendant Casualty Company.

It is hard to understand how these withdrawals of Bane, charged against him on the general ledger of H. P. King Company, could have escaped the notice of the creditors' committee. H. P. King Company was in financial trouble, while the creditors' committee was in charge, and the books would naturally have been scrutinized to discover all available resources. Mr. Sells, however, at the head of this creditors' committee, testified that he knew nothing of Bane's abstractions during this period, and we have no reason to question the truth of his statement. This account of Bane's however, was brought sharply to the attention of the receiver appointed by the federal court who conducted this business from December 14, 1929, until April 15, 1930. During this time the receiver had an audit of the books made, and this account against Mark C. Bane was charged off by the receiver as a bad debt some weeks before the petition in bankruptcy.

From the very nature of the account, the suspicion of Stone, the second auditor, and of Sells, was aroused. As soon as Sells learned of the matter, he at once gave notice to defendant Casualty Company of his intention to make a claim.

The federal receiver had the same knowledge of the affair that was later acquired by Sells. Having had the books examined, he knew that this was not a salary account, not a stock account, was an unusual account, and could represent nothing but willful withdrawals or ab-

stractions by Bane. Yet, the receiver had the account charged off.

The receiver was entitled to bring suit on this bond just as H. P. King Company was so entitled prior to the receivership. He was bound by the terms of the bond and any defense good against H. P. King Company was good against the receiver. High on Receivers (4 Ed.)', section 245, and 53 C. J., 329.

We think the ten-day ·limitation for notice ran against the receiver just as it would have run against H. P. King Company, and that a failure on his part to give this notice within ten days of the discovery of Bane's abstractions released defendant Casualty Company from liability. The statute of limitations runs against a receiver, and we see no reason why a contract limitation such as is contained in the bond would not likewise run against him. High on Receivers, sections 135, 184; 17 R. C. L., 979. The receiver could not have denied knowledge of Bane's withdrawals after dealing with his account as heretofore set out. *Noyes* v. *Parsons*, 104 Wash., 594, 177 P., 651.

It results that any right of action on this bond on account of Bane's abstractions had been lost when this property went out of the hands of the federal receiver and into the bankruptcy court. No such right of action therefore passed under the sale of the bankruptcy court to King's, Inc.

For these reasons the decree of the chancellor is reversed and the bill dismissed.