NASHVILLE & AMERICAN TRUST CO v. AETNA CASUALTY & SURETY CO.—110 S. W. (2d), 1041.

Middle Section.  July 17, 1937.

Petition for Certiorari denied by Supreme Court, December 17, 1937.

Seay, Stockell & Edwards, of Nashville, for appellant, Aetna Casualty & Surety Co.

Fyke Farmer, of Nashville, for appellee, receiver.

CROWNOVER, J.  This suit was brought upon a fidelity bond issued to the Nashville Protestant Hospital by the Aetna Casualty & Surety Company insuring it against loss by any act or acts of fraud,

dishonesty, theft, or embezzlement on the part of certain employees, directly or through connivance with others.

It was alleged in the original bill that the hospital had sustained a loss of $2,754.74 on account of embezzlement of its funds by its book-keeper, Edna B. Nellums, one of the employees covered by the bond; that notice of the discovery of the loss had been given the bonding company and claim filed, but the company had refused to pay the amount of said loss.

The defendant bonding company answered and denied that the bookkeeper had embezzled or wrongfully misappropriated funds of the hospital, and alleged that she had been permitted to borrow money from the hospital for which she had executed her note, and further that the hospital was indebted to her for her "bonus" which had not been paid to her and for her board, which amount was in excess of her indebtedness. It later amended its answer and denied liability on the ground that no notice had been given it within ten days after the discovery of the loss, as required by the bond; and alleged further that the receiver had failed to give notice within ten days after he discovered the loss.

The chancellor found that the hospital had sustained a loss on account of acts of fraud, dishonesty, or wrongful misappropriations on the part of Edna B. Nellums while holding the position of cashier and bookkeeper and while being one of the employees covered under the terms of said fidelity bond; that no director or officer of the hospital had knowledge of the wrongful acts of the bookkeeper prior to the appointment of the receiver, except Dr. E. M. Sanders, who was in connivance with her; that his knowledge was, therefore, not imputable to the hospital, and there was no duty upon the hospital, under these circumstances, to give notice to the bonding company prior to the appointment of the receiver; that the receiver was not under a duty to give notice to the bonding company immediately upon discovering that the bookkeeper owed the hospital a sum of money, but that it had a reasonable time to make an investigation for the purpose of ascertaining the character of the transactions and whether or not they were such as to amount to a loss from acts which would constitute the basis of a claim under the bond; that notice of the discovery was given by the receiver to the bonding company as soon as it was reasonably satisfied that these acts constituted the basis for such a claim.

On a reference to the clerk and master he reported that Edna B. Nellums had embezzled or misappropriated the sum of $2,722.11, and a decree was entered against the defendant bonding company for this amount.

The defendant bonding company excepted to said decree and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The chancellor erred in finding and holding that Dr. E. M. Sanders was in connivance with Miss Nellums in the misappropriation of the hospital's funds, and that therefore his knowledge of the same was not imputable to the Nashville Protestant Hospital.

(2) The chancellor erred in failing to hold that the hospital's failure to give notice within ten days after Dr. Sanders' discovery of the loss forfeited the right of recovery.

(3) The chancellor erred in finding and holding as follows:

"The Court further finds and holds that the Receiver was not under a duty to give notice to the defendant immediately upon learning that the said Miss Nellums owed the hospital a sum of money, but that it had a reasonable time to make an investigation for the purpose of ascertaining the character of the transactions and whether or not they were such as to amount to a loss from acts which would constitute the basis of a claim under the bond. Notice, of the discovery was given by the Receiver to the defendant as soon as it was reasonably satisfied that these acts constituted the basis for such a claim."

(4) The chancellor erred in finding and holding that the defendant, Aetna Casualty & Surety Company, is indebted to the recevier of the Nashville Protestant Hospital in the sum of $2,722.11, or in any amount.

We have carefully read the record and examined the exhibits, and we are of the opinion that Miss Nellums flagrantly embezzled funds belonging to the hospital, in the amount found by the clerk and master and the chancellor, and that Dr. Sanders connived at said embezzlement. He was notified by Miss Purnell in December, 1931, that Miss Nellums was misappropriating the funds of the hospital. He was shown a list of the various misappropriations, which amounted to more than $1,000. He replied that she could not get away with it, and that he would have to investigate. The matter ran along for more than three months when Miss Purnell again drew his attention to the matter and told him that she was still misappropriating funds. He replied that he was having it investigated. Afterwards Mrs. Clark told him about it, and later Mrs. Livingston told him of the misappropriations and offered to give him a list of them, and he replied that he was already informed about it. Dr. Sanders informed Dr. Blanton about it and said there were some irregularities, and he discussed with an accountant the question of making an audit, but the accountant was busy at that time making out income tax reports and the matter was deferred and nothing done. Dr. Sanders was an able doctor and had actual knowledge of Miss Nellums' daily misappropriations, which amounted to more than $2,000. He knew it was necessary to take some immediate steps to stop it, but he did nothing.

The receiver was appointed on July 8 or 9, 1932, and its represen-

tative in charge of the hospital was notified of Miss Nellums' abstractions within about two days after its appointment and was shown a list of her misappropriations and was fully informed of the defalcations, but gave the bonding company no notice until November 1, 1932.

The Nashville Protestant Hospital was chartered as a public welfare corporation for the purpose of conducting a hospital. It appears that the management was to be in the hands of a doctor and his staff.

Dr. E. M. Sanders was secretary and treasurer and manager. He was the sole head of the hospital and was aided only by an advisory board with which he frequently conferred.

On March 24, 1926, the defendant Aetna Casualty & Surety Company issued to the hospital a fidelity bond indemnifying it against loss by fraud, theft, etc., on the part of certain employees, one of which was the cashier and bookkeeper.

Dr. Sanders died on June 30, 1932, before this case was tried.

Several days after his death the hospital went into the hands of a receiver.

Dr. Sanders had employed Miss Edna B. Nellums, in September, 1929, as cashier and bookkeeper at a salary of $100 per month.

There were already three assistant bookkeepers in the office—Miss Purnell (now Mrs. Rochelle), Mrs. Livingston, and Mrs. Clark.

It was testified in this case by these bookkeepers that the books were never balanced; that there was practically no bookkeeping system; and that the cashbook was never balanced and couldn't be balanced.

The ledger sheets filed as exhibits show that no effort was made to keep books, and that it was impossible to tell much about the hospital's affairs from the books.

It appears from Miss Nellums' testimony that during the year 1929 she took money from the cash drawer several times and put into the drawer a memorandum of the same in pencil on a scrap of paper. She testified that some time in 1931 one of the assistant bookkeepers found a box in the safe containing "checks that had never been cashed and tickets that had been forgotten," and she made the following entry on her ledger sheet: "Forwarded 1929 $21.68."

She had not been given permission to borrow from the cash drawer in 1929.

She testified that in April, 1930, she went to Dr. Sanders, just as he was about to perform an operation, and asked him if she could borrow some money. She expressed it as follows:

"I went to him, I remember exactly where he was when I was talking to him; he had his cap and gown on back in the old surgery and I went to him and explained that I was going to need some help from time to time and I wanted to know if he would be willing to

help me to this extent, I didn't know exactly at that time, in fact, I didn't state how much I would need, and he said 'go right ahead but be sure to keep a very strict record of everything that we can know just where we stand.' "

She took $50 from the cash drawer and put in memorandum of same. This ticket was entered on her salary account on the ledger under date of April 24, 1930. There was written on the ticket in Miss Nellums' handwriting: "This was O.K.'d by Dr. E. M. S."

She testified: "I did not owe a penny until I spoke to him in this regard." But before this April, 1930, transaction, she had taken from the drawer in 1930 (in addition to the 1929 tickets above mentioned) the following amounts for which she had put pencil memoranda in the cash drawer:

| | |
|---|---:|
| January 2, 1930 | $ 2.00 |
| January 3, 1930 | 25.00 |
| January 11, 1930 | 4.00 |
| January 25, 1930 | 1.00 |
| March 29, 1930 | 135.00 |

Her salary account on the ledger was overdrawn $50 before this withdrawal of April 24, 1930.

From June, 1930, to July 8, 1932, she withdrew money from the cash drawer almost every day. In the month of March, 1931, she made 30 tickets, totaling $399.65; in July, 1931, she made 25 tickets, totaling $119.76; in December, 1931, 23 tickets, totaling $128.45; in February, 1932, 22 tickets, totaling $154.45; in March, 1932, 22 tickets, amounting to $147; in April, 1932, 21 tickets amounting to $119.10; in May, 1932, 24 tickets, amounting to $164.35; in June, 1932, 20 tickets, amounting to $169.85

Some of her tickets (not included in the above) were entered on her salary account on the ledger and then taken out of the cash. The salary account on the ledger was overdrawn $322.94 when the receiver was appointed.

Some of these tickets made by Miss Nellums state that they were issued for "room," "board," "dress," "laundry," etc., all personal expenses of Miss Nellums.

It appears that on the dates on which she did not need money for her personal expenses she took the cash from the cash drawer and deposited it to her own credit in the Commerce Union Bank and carried the deposit slip back to the hospital and put it in the cash drawer as a "ticket."

Seven tickets for $135 each and one for $124.39, totaling $1,069.39, signed by Miss Nellums, were found in the safe.

A small sum of money, the Nurses' Christmas Fund, was kept in the hospital safe. Miss Nellums removed $5 from it and put her check in the place of it, which check was never paid. She says there

was evidently no cash in the cash drawer on that date so she "borrowed" from the Nurses' Fund.

While she was taking money from the cash drawer almost daily, some of the tickets being in the amounts $30, $50, $69.62, $130, and $135, there was not enough money to pay the other employees in full and they were drawing a few dollars at a time on their salaries. Creditors of the hospital were unable to collect their bills, and collectors were calling in numbers every day. And Dr. Sanders knew this.

The ledger sheets of her salary account show that no attempt was made to keep books. The items entered under a given month and marked "salary" often amounted to much more than a month's salary.

The cashbook couldn't be balanced, so there was no way of knowing how much cash was taken from the drawer except by adding up these scraps of paper.

On December 20, 1931, Miss Purnell informed Dr. Sanders that Miss Nellums had taken from the cash drawer more than $1,000, and showed him a list of the cash tickets, which list she and the other two assistant bookkeepers had made up from the tickets in drawer. In her deposition in this case Miss Purnell, now Mrs. Rochelle, testified that when she gave Dr. Sanders this information he expressed surprise, stating: "She can't get away with that."

No claim was filed by Dr. Sanders with the bonding company.

Mrs. Rochelle (formerly Miss Purnell) further testified that after she gave this information to Dr. Sanders he came into the office one night when she was working late and went through the ledgers and cashbook and looked at the tickets in the current envelope in the cash drawer.

Mrs. Livingston testified that she informed Dr. Sanders of the situation in the spring of 1932 and he told her he already had information about it.

Mrs. Livingston testified that before Miss Nellums went away on a vacation, in the summer of 1931, she put all of her cash tickets in an envelope which she put in the back of the safe and told them that if she should happen to have an accident she wanted them to give the envelope to Dr. Sanders.

In January, 1932, Miss Nellums' salary was reduced to $75 per month.

On May 30, 1932, Miss Purnell, Mrs. Livingston, and Mrs. Clark signed the following paper:

"May 30, 1932.

"This is to certify that we, the undersigned, employees at the Protestant Hospital in the office, at different times have called the attention of Dr. E. M. Sanders to the fact that Miss Edna B. Nellums,

who is Cashier at the hospital, was overdrawing her salary and making tickets for the amount taken.

"At one time he was shown a list of these tickets with their respective dates and amounts, said tickets aggregating something over One Thousand Dollars for the years 1931 and 1930. This conversation took place before January 1, 1932.

"Since that time she has continued to overdraw her salary each month, but Dr. Sanders knowing this, has not seen fit to do anything about it.

"This paper is written and signed merely for our own protection in event something does come of this fraud at some later date as all of us are under bond with Hall & Benedict. This 30th day of May, 1932."

J. A. Grannis, a certified public accountant, testified that on February 11, 1932, he had a conference with Dr. Sanders and Dr. Blanton (a member of the Hospital Board), in which Dr. Sanders told him there appeared to be discrepancies in the accounts and he wished an audit made; that the making of an audit was postponed on account of other matters, and it was never taken up again.

Dr. Sanders died on June 30, 1932, and the Nashville & American Trust Company was appointed receiver for the hospital on July 8 or 9, 1932.

In her deposition in this case, Miss Nellums testified that on January 1, 1932, Dr. Sanders told her to make a note for the amount she owed the hospital, and she executed a note for $1,069.39. This note in the record is dated January 4, 1932. During her cross-examination, when it developed that some of her tickets which she had included in this note were dated 1932, she admitted that she made the note after the appointment of the receiver and dated it back.

At the same time that she executed the note for $1,069.39 she executed two other notes, one for $994.39, dated April 4, 1932, and one for $919.39, dated July 4, 1932. These notes purport to be renewals of the $1,069.39 note. On the back of each is a statement that the note should be credited with her "bonus of $25.00 per month."

The three notes were left in the safe.

These renewal notes were evidently executed at the same time as the original note for $1,069.39, as the cash ticket for January, February, and March were not added to the renewal note supposed to be executed on April 4, and the April, May, and June cash tickets were not added to the note supposed to be executed on July 4. Each note is for $75 less than the other, which amount Miss Nellums claims is for her bonus of $25 per month.

In July, 1932, the assistant bookkeepers informed Mr. Witherspoon, the representative of the receiver in charge of the affairs of the hos-

pital, of these misappropriations. But no claim was filed with the bonding company until November 1, 1932.

Miss Nellums. testified that when she made the note for $1,069.39 she carried home her tickets which made up this amount.

After Mrs. Rochelle (Miss Purnell) testified in this case that she and the other assistant bookkeepers in the office had made a list of the original tickets and filed the list, Miss Nellums then filed what she says are the original tickets, but these tickets (about two hundred tickets) do not correspond in dates or amounts with the list filed by Mrs. Rochelle.

Miss Nellums undertakes to account for this variance by saying that at the end of the month the tickets were added up, her salary deducted, and a new ticket made for the amount over and above the salary. But this is no explanation at all. By comparing the tickets it will be seen that the amounts cannot be accounted for this way.

When she was asked about the seven tickets for $135 each and one for $124.39, she first said they were consolidations of the smaller tickets, but when it appeared that the smaller tickets could not be consolidated into amounts of $135, she said she spent the money in amounts of $135 and that was the reason why she made those tickets.

At the hearing of the case Miss Nellums contended that when her salary was reduced to $75 in January, 1932, Dr. Sanders agreed to pay her a bonus of $25 per month. She also contended that when she was employed, in September, 1929, it was a part of her compensation that she should be permitted to take her meals at the hospital with the other employees, but that she was unable to eat the food furnished to the employees so did not take her meals there, and that she was therefore entitled to a credit of $25 per month from September, 1929, to August, 1932.

1 and 2. We think the chancellor was correct in holding that Dr. Sanders knew of the daily misappropriations of the hospital funds by Miss Nellums, and connived at the misappropriations. He was informed of the misappropriations in December, 1931, and was shown a list of the same, which showed that Miss Nellums was making serious inroads into the finances of the hospital. She was misappropriating money almost every day. Dr. Sanders did nothing about it. It ran along for two or three months, and another one of the employees told him of the continuance of these misappropriations. He replied that he knew it and was investigating. Later he was again notified at different times by two other employees that she was still misappropriating the hospital funds. He admitted that he knew it, but showed little interest in the information given him at that time. He died without having done anything about the matter. It is inconceivable that a man of Dr. Sanders' experience would let such flagrant misappropriations run as he did without conniving at them; hence we think the chancellor was correct in holding that Dr. Sanders.

connived at the misappropriations, and that therefore his knowledge was not imputable to the hospital. Fidelity & Deposit Company of Maryland v. Courtney, Receiver, 186 U. S., 342, 22 S. Ct., 833, 46 L. E., 1193; United States Fidelity & Guaranty Company v. Walker, 5 Cir., 248 F. 42.

█ 3. We think the chancellor erred in holding that the receiver was not bound to give notice to the bonding company immediately upon learning of said embezzlement.

On July 10, 1932, the three assistant bookkeepers of the hospital gave Mr. V. I. Witherspoon, the receiver's representative in charge of the hospital, notice of Miss Nellums' embezzlement.

The bond provides:

"First: That this bond does not cover loss caused by any person unless such loss is discovered during the period the person causing the loss is covered by the bond or within 15 months after he ceases to be so covered; and even if loss be discovered within the time aforesaid, it shall not be covered unless notice thereof is given to the Company within ten days after such discovery and such notice is followed with a verified statement of claim within 90 days after such discovery."

"The words 'the discovery of fraud or of default' as used in bond held to mean the knowledge of facts and circumstances sufficient to satisfy persons of ordinary prudence that default or conversion had been committed." Fourth & First Bank & Trust Co. v. Acc. Ins. Co., 12 Tenn. App., 311.

Failure on his part to give this notice within ten days after the discovery of her abstractions after investigation released the defendant Aetna Casualty & Surety Company from liability. King's, Inc., v. Maryland Cas. Co., 169 Tenn., 404, 408, 88 S. W. (2d), 456; Fourth & First Bank & Trust Co. v. Acc. Ins. Co., supra; Fidelity & Deposit Company of Maryland v. Courtney, Receiver, 186 U. S., 342, 22 S. Ct., 833, 46 L. Ed., 1193; United States Fidelity & Guaranty Company v. Barber, 6 Cir., 70 F. (2d), 220. The receiver could have investigated the matter within a week, as all the parties were at the hospital. Four months was entirely too long a time.

██ 4. The clerk and master reviewed all the facts of the case and went over all the tickets and charge accounts, and held that she was liable for $2,722.11 and was not entitled to any bonus. We think the clerk and master's findings are correct.

Miss Nellums' testimony that she was entitled to a bonus of $25 per month is uncorroborated. Miss Nellums was guilty of open and flagrant embezzlement, for which she gives no reasonable excuse. She also falsified her accounts and contradicted herself in her testimony on most of the important facts connected with the affair, and

we hold that her testimony is not entitled to any weight except when corroborated by other trustworthy evidence.

Unexplained conflicting statements of a witness nullify each other, and are entitled to no weight as evidence unless corroborated. Johnston v. Cincinnati Railroad Co., 146 Tenn., 135, 240 S. W., 429; De Grafenreid v. Nashville Railway & Light Co., 162 Tenn., 558, 39 S. W. (2d) 274.

She doesn't even claim that there was ever any agreement made that she should be reimbursed to the amount of $25 per month because she did not care to eat the meals provided at the hospital.

Hence, taking everything into consideration, we think the clerk and master reached the right conclusion as to the amount she owes. The chancellor confirmed this report, and we agree with them.

But having held that the information given the receiver on July 10, 1932, was sufficient notice of the embezzlement, and that he should have notified the bonding company after receipt of this information, the complainant is not entitled to recover. The receiver's representative was a business man of affairs and knew on July 10, 1932, that Miss Nellums was guilty of embezzlement. He also knew the conditions of the bond, and there was no reason or excuse why he should have delayed the matter until November. Therefore, the third assignment of error having been sustained, the decree of the chancellor is reversed and the bill is dismissed. The costs of the cause including the costs of the appeal are adjudged against the receiver and the surety on its prosecution bond.

Faw, P. J., and Felts, J., concur.