# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs May 3, 2016

## SUNTRUST BANK v. ANGELA CHRISTINA BEST
## a/k/a CHRISTINA BEST

**Appeal from the Circuit Court for Knox County**
**No. C-14-167814     Kristi M. Davis, Judge**

---

### No. E2015-02122-COA-R3-CV-FILED-AUGUST 26, 2016

---

Angela Christina Best ("Best") appeals the decision of the Circuit Court for Knox County ("the Trial Court") granting summary judgment to SunTrust Bank ("SunTrust") and awarding SunTrust a judgment against Best in the amount of $379.60 plus post-judgment interest and attorney fees. Best raises issues regarding whether the Trial Court erred in exercising jurisdiction after finding that the contract at issue in this case contained an arbitration clause, whether the Trial Court erred in granting summary judgment both on SunTrust's complaint and on Best's counterclaim, and whether the Trial Court erred in granting SunTrust's attorney's fees allegedly in excess of those allowed under the contract. We find and hold that the arbitration clause in the contract never was triggered, that SunTrust made a properly supported motion for summary judgment, that Best failed to show any genuine disputed issues of material fact, and that SunTrust was entitled to summary judgment both on the complaint and on Best's counterclaim. We further find and hold that the attorney's fees awarded were in excess of those allowed under the contract. We, therefore, affirm the grant of summary judgment and modify the award of attorney's fees to comply with the contract.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed, in part; Modified, in part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ. joined.

Hugh B. Ward, Jr. and Mindy L. Nower, Knoxville, Tennessee, for the appellant, Angela Christina Best.

John R. Cheadle, Jr. and Mary Barnard Cheadle, Nashville, Tennessee, for the appellee, SunTrust Bank.

# OPINION

## Background

SunTrust sued Best in the General Sessions Court for Knox County ("General Sessions Court") with regard to an alleged debt owed on an account ("The Account") titled in the name of "MILDRED E BEST POA." The General Sessions Court dismissed the case, and SunTrust appealed to the Trial Court.

The Account was opened in 2007. The signature card for the Account shows the account title as "MILDRED E BEST POA," and contains the "Authorized Signature(s)" of "Mildred E. Best" as "Signature 1," and "A. Christina Best" as "Signature 2." The signature card also states, in pertinent part:

> It is agreed that all transactions between the Bank and the above signed shall be governed by the rules and regulations for this account and the above signed hereby acknowledge(s) receipt of such rules and regulations and the funds availability policy. The above signed also acknowledge(s) the funds availability policy has been explained.

> A SunTrust ATM Card or Check Card ("Card") may be requested by one or more of the above signed depositors, if applicable, for the purpose of initiating electronic funds transfers. Upon use of Card by one or more of the depositors, the depositor(s) hereby agree(s) to be bound by the terms and conditions set forth in the Bank's Rules and Regulations for Deposit Accounts.

In pertinent part, the SunTrust Rules and Regulations for Deposit Accounts ("Rules and Regulations") provides:

> All Accounts are subject to these rules and regulations and related account agreements or authorizing documents executed by the Depositor. Once the Account is opened, you agree to be bound by these rules and regulations and that the rules and regulations will continue to govern your Account and your relationship with us even after your Account is closed. . . .

> * * *

> You agree to be bound by and to follow these terms in any and all future actions and transactions. These rules and regulations cannot be changed or modified orally.

2

**GENERAL TERMS AND DEFINITIONS**

* * *

**Personal Accounts**

* * *

**"Joint Account," also referred to as "Joint Account with Survivorship,"** is an Account which is owned by two or more individuals as joint tenants with right of survivorship and **not** as "tenants in common" or "tenants by the entirety." Upon the death of one of the joint owners, the Account will belong to the surviving joint owner or joint owners. . . .

* * *

You are not permitted to change the account ownership to anything other than a "joint tenants with right of survivorship," including "tenants by the entirety" or "tenants in common" without the Bank's approval. We will treat all Joint Accounts, unless otherwise indicated on the Bank's records, as "joint tenants with right of survivorship" for all purposes, including, but not limited to writs, levies, setoffs, and determination of ownership upon death.

**"Joint Account - No Survivorship,"** is an Account owned by two or more individuals and opened in one of the following states, which permits the owners to elect no rights of survivorship on their Joint Account. For accounts established in Arkansas, North Carolina, Virginia, Maryland and District of Columbia, upon the death of any one of the owners, the deceased owner's share is passed to his estate, trust, or pursuant to state intestacy law when proof of qualification acceptable to us is received. To exercise the option to elect no rights of survivorship on your Account, you must notify us in writing and complete our required documentation.

* * *

**GENERAL RULES FOR ALL DEPOSIT ACCOUNTS**

* * *

**Signature Authorities**

* * *

**Power of Attorney.**  The Bank may in its sole discretion refuse to honor or accept a power of attorney to open, close, deposit, or withdraw funds from your Account or to supply endorsements on checks or any other items or to take any other action with respect to your Account.

If you wish to grant an individual power of attorney over your Account, we make available our SunTrust Specific Durable Power of Attorney, which is available at any SunTrust Branch location.  We may accept a non-SunTrust power of attorney form that we believe was executed by you and act on instructions we receive under that form without any liability to you.  We may require the agent or attorney-in-fact to confirm in an affidavit that the power has not been revoked or terminated or that you are not deceased.  We may require that you register the power with the appropriate recording authorities.  We may restrict the types or amounts of transactions we permit an attorney-in-fact to conduct.

We may require a separate form for each Account for which you want to grant power of attorney.  If your agent or attorney-in-fact does not present the original form, we may either accept or refuse to honor any power of attorney you grant and with no liability to you.  If we accept a power, we may continue to recognize the authority of your agent or attorney-in-fact until we receive written notice of revocation from you and have had a reasonable time to act on it.

The Bank within its discretion may not recognize a power of attorney given by one owner of a Joint Account without the consent of the other Joint Account holder(s).

You agree to indemnify and hold SunTrust harmless for accepting and/or honoring any power of attorney, or copy thereof, which SunTrust accepts in good faith and believes is valid and authorized by you.

* * *

**ARBITRATION AGREEMENT**

4

**READ THIS PROVISION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.**

**YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT AS SET FORTH BELOW. If you do not reject this arbitration agreement, for a Claim subject to arbitration, neither you nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration.**

**Claims Subject to Arbitration.** A "Claim" subject to arbitration is any claim, dispute or controversy between you and us (other than an Excluded Claim or Proceeding as set forth below), whether preexisting, present or future, which arises out of or relates to the Account, these rules and regulations or any transaction conducted with us in connection with the Account or these rules and regulations. . . .

\* \* \*

**Arbitration Procedures.** If you or we elect to arbitrate a claim, the electing party must notify the other party in writing. This notice can be given after the beginning of a lawsuit and can be given in papers filed in the lawsuit. . . .

\* \* \*

**Collection Costs**

You are liable for all amounts charged to your Account, whether by offset, overdraft, lien or fees. If we take court action or commence an arbitration proceeding against you to collect such amounts, or if you elect arbitration of a collection action we have brought against you in court, you will also be liable for court or arbitration costs, other charges or fees, and attorney's fees up to 25 percent, or an amount as permitted by law, of the amount owed to us. . . .

5

Mildred E. Best died in May of 2011. The record reveals that Gary Best, Mildred E. Best's son, has asserted that he is the Executor of Mildred E. Best's estate. The charges on the Account at issue in this suit were made by means of a check card in March of 2013, nearly two years after the death of Mildred E. Best.

SunTrust filed a motion for summary judgment alleging, in pertinent part, that Best "had unlimited authority to make withdrawals on the account and that she agreed to be governed by the 'Rules and Regulations for Deposit Accounts,'" that SunTrust never was notified of the death of Mildred E. Best, that Best continued to use the Account after Mildred E. Best's death, that withdrawals made on the Account exceeded the funds on deposit, and that Best failed to pay the money back.

Best filed a response to the motion for summary judgment supported, in part, by her affidavit, which states, in pertinent part:

2. My Father is Gary Best.. [sic]

3. My Grandmother was Mildred Best who passed on May 4, 2011.

4. I agreed to act as Mildred Best's Attorney-in-Fact upon her grant of Power of Attorney, and signed as such on the described "Account Title Mildred E. Best POA." I did so to assist my Grandmother during her lifetime as she and I resided in the Knoxville Tennessee area and my Father frequently travels abroad and lives in the Atlanta Georgia region.

5. The only role I accepted on this account was Attorney-in-Fact on the grant of Power of Attorney by Mildred Best. I did not accept, at the time, nor do I acknowledge now, a "survivorship" capacity regarding this account. When I began these responsibilities, SunTrust instructed me to affix my signature, in use of this account with the identifier "POA."

6. My Father, [sic] possessed the Check Card of this account and used it before and after Mildred Best's death to make deposits and withdrawals – frequently with his own funds – on behalf of my Grandmother.

7. My limited use of the account was with my Father's express instructions and knowledge.

8. Any of my, [sic] "various check card transactions, ATM withdrawals, and ATM deposits," on this acccount were limited and with my Father's express instructions and knowledge.

9. I did not "utilize social security funds that were direct deposited into the account after Mildred Best's death."

10. On or about March 6, 2013, my Father informed me that a $44.40 and $379.60 charge was [sic] made on the Check Card at Quality Inn in Fort Walton Beach Florida that was not authorized and not valid.. [sic]

11. My Father asked me to notify SunTrust.

12. From March 6, 2013, and for several months thereafter, I was in contact with representatives of SunTrust attempting to resolve dispute [sic].

13. During this period, on April 24, 2013, SunTrust on its own, and without my request, cancelled the Check Card of the account and reissued a new version.

14. During this period, on April 24, 2013, I made a good faith deposit of $101.00 to this account while SunTrust investigated this dispute.

15. On June 12, 2013, I was informed by SunTrust that the account was closed.

16. On August 29, 2013, I was informed by SunTrust that my request to see the results of SunTrust's investigation of the merchant [Quality Inn, Fort Walton Beach, Florida] was denied again, as had all previous request [sic].

17. On February 17, 2014, I was informed by counsel for SunTrust that these charges remained due and owing.  I continued to dispute the charges.. [sic]

Best also filed the affidavit of Gary Best, which states, in pertinent part:

4. My Mother was Mildred Best who passed on May 4, 2011.  Thereafter, I became the Executor of her Estate.

5. I reported Mildred Best's passing to persons at the SunTrust Bank branch at 2600 Dallas Highway, Marietta, Georgia, 30064.  No one associated with SunTrust Bank advised me of any requirement to provided formalized notification of Mildred Best's death.

7

6. Before Mildred Best's death, I possessed and used the SunTrust check card which is the subject of the present dispute.

7. The funds deposited in this account were monies from the sale or future sales of Mildred Best's property such as antiques, vehicles and monies due her or my late Father and for payment of my Mother's funeral, general expenses and vehicle expenses.

8. Mildred Best's Social Security funds were automatically deposited into this account and after her death I refunded to Social Security Administration any such funds received to which she was not entitled.

9. I deposited my own Social Security funds into this account to prevent possible overdrafts when I anticipated debits might exceed account credits.

10. Angela Best did not possess or use the SunTrust check card except with my express permission and knowledge.

11. Immediately after the $379.60 Quality Inn Fort Walton Beach, Florida purchase became known, I instructed Angela Best to report it as not valid to SunTrust and she made a good faith deposit, on advice of SunTrust Fraud Department, while the matter was being investigated.. [sic]

12. SunTrust, on its own and without request, canceled the check card. Thereafter, and without request from wither [sic] I or Angela Best SunTrust and [sic] issued a new check card.

Best filed a motion to dismiss. Best also filed a counterclaim for negligent misrepresentation alleging, in pertinent part:

22. SunTrust Bank (1) negligently represented to [Best] that the account to which she entered with Mildred E. Best was limited to the duties and responsibilities of attorney-in-fact granted by a Power of Attorney and instructed her to identify herself on this account as "A. Christina Best, POA"; (2) knew this was false and, at all times, knew that the terms of the purported "rules and regulations" of the subject account, which were never disclosed to [Best], state a "joint ownership with survivorship interest"; (3) induced [Best] to rely on representations of her limited responsibilities and duties as attorney-in-fact under the Power of Attorney, which expires upon death of the grantor; (4) enabled her agreement to undertake these duties, without her intending or being aware of "joint ownership" of the subject

8

account, through falsley informing [Best] and withholding and failing to disclose information of continuing liability of "joint ownership"; and (5) injured [Best] as a result of her reasonable reliance on SunTrust Bank with allegations that have caused harm to [Best's] credit standing and credit rating and for liabilities which she did not knowingly undertake.

SunTrust filed a motion to dismiss the counterclaim for failure to state a claim and for failure to obtain leave of court prior to filing the counterclaim.

After a hearing on the pending motions, the Trial Court entered its order on July 30, 2015, *inter alia*, denying Best's motion to dismiss, denying SunTrust's motion for summary judgment, and denying SunTrust's motion to dismiss the counterclaim.

Discovery proceeded, and Best was deposed. Best was 45 years old at the time she gave her deposition. During her deposition, Best testified that the signature card for the Account contained her signature, but Best could not recall executing that document. Best testified that she could not recall opening the Account.

Best was questioned about her communications with SunTrust in 2013. Best testified that she communicated with SunTrust in 2013 "[r]egarding the invalid charges" underlying this suit. When asked which charges she was disputing, Best replied, "I don't recall." Best testified that she disputed the charge "[p]er the instruction of [her] father." When asked why her father wanted the charge disputed, Best replied, "I don't know." Best was asked: "What was your dispute?" and she replied, "[p]er his instructions that it was invalid." Best was asked if she disputed any other charges, and she stated: "I don't recall." She then added, "[j]ust per his instruction, the one previously stated, 379.60." When asked why the charge was being disputed, Best replied: "[p]er his instructions." Best admitted that she did not know what the underlying dispute concerned.

Best admitted that in March of 2013, she signed a Statement of Dispute as "Mildred E. Best, A.C. Best, POA." Best was asked why she signed as power-of-attorney for her grandmother in 2013, when her grandmother had died in 2011, and Best stated: "On behalf of my father's power of attorney. . . . I had his power of attorney." Best insisted that she signed the Statement of Dispute as power-of-attorney for her father, but admitted that she wrote her grandmother's name. She further admitted that her father's name does not appear on the Statement of Dispute.

The Statement of Dispute shows two items being disputed, a charge for $25.76 from Quality Inn and a charge for $379.60 from Quality Inn. Best again was asked if she could recall disputing the charge for $379.60, and she replied: "I don't remember." When asked if that was the charge she currently was disputing, Best stated: "[p]er my

9

father [sic] instructions, yes." When asked why the charge was being disputed, Best stated: "[t]hat it was invalid." When asked why the charge was invalid, Best stated: "I don't remember."

Despite the fact that the Statement of Dispute also contains a dispute regarding a charge for $25.76, that amount never was charged to the Account. Best was asked why she listed the charge for $25.76 on the Statement of Dispute, and she stated: "[p]er my father's instructions." Best stated that she did not "have any information" on where the $25.76 charge came from. She also testified that she knows nothing about the charges from Quality Inn and does not know who stayed at the Quality Inn. The relevant monthly statement for the Account shows a few other charges from the same Quality Inn made several days prior to the disputed charges. Best admitted that she did not dispute those other charges.

A Rubuttal Form executed by Best in April of 2013, states, in pertinent part:

Mildred Best authorized only 2 charges of $44.40 on 2/28 and 2/27 via the internet for services at Quality Inn – Fort Walton, FL. No other charges were authorized & no services were received from this merchant. We were and are in possession of the card so no swiping or signature was provided as well.
Please refuse the unauthorized debit from the account of $379.60 immediately.

This quoted language was handwritten in the space provided on the Rebuttal Form above where Best wrote her phone number and dated and signed the form. Best stated: "That's my signature; I can't confirm the handwriting." Best was asked how Mildred Best authorized any charges to the Account in 2013, when she had died in 2011, and Best stated: "I don't have information on that." Best testified that she did not know who authorized the charges, but admitted that she signed the Rebuttal Form stating that Mildred Best authorized the charges.

At the time of her deposition, Best did not have a copy of her credit report and when asked if she had obtained one recently, Best stated: "I don't remember." Best could not recall if she had seen her credit report within the last year. When asked how SunTrust had harmed her credit, Best stated: "I don't have specifics on the credit, not seeing the report. . . . I don't have that information available today."

SunTrust filed an amended motion for summary judgment. After a hearing on the amended motion for summary judgment, the Trial Court entered its Memorandum Opinion and Order on September 30, 2015 finding and holding, *inter alia*: that during her

10

deposition Best could not articulate any basis for disputing the charge at issue, that it was undisputed that Best's father does not have an ownership interest in the Account, that SunTrust had investigated and determined that the disputed charge was a valid charge, that Best had produced no evidence of any kind that supported her contention that SunTrust negligently misrepresented the nature of the Account when Best opened it, and that Best could not articulate any damages she had sustained as a result of the alleged negligent misrepresentation. The September 30, 2015 order granted SunTrust summary judgment, awarded SunTrust a judgment for $379.60 plus post-judgment interest, and dismissed Best's counterclaim. By order entered October 26, 2015, the Trial Court awarded SunTrust attorney's fees in the amount of $7,500.00. Best appeals to this Court.

## Discussion

Although not stated exactly as such, Best raises four issues on appeal: 1) whether the Trial Court erred in exercising jurisdiction over the case after finding that the parties were subject to SunTrust's Rules and Regulations, which contained a binding arbitration clause; 2) whether the Trial Court erred in granting summary judgment to SunTrust as to the complaint; 3) whether the Trial Court erred in granting summary judgment to SunTrust as to Best's counterclaim; and, 4) whether the Trial Court erred in awarding attorney's fees allegedly in excess of those allowed under the SunTrust Rules and Regulations.

We first consider whether the Trial Court erred in exercising jurisdiction over the case after finding that the parties were subject to SunTrust's Rules and Regulations, which contained a binding arbitration clause. Both Mildred E. Best and Best executed a signature card for the Account that clearly and unambiguously states that "all transactions between the Bank and the above signed shall be governed by the rules and regulations for this account and the above signed hereby acknowledge(s) receipt of such rules and regulations. . . ."

The provisions of the contract created by the signature card and Rules and Regulations are clear and unambiguous, and we must give effect to the parties' intent. It is not the role of this Court "to make a different contract than that executed by the parties." *Posner v. Posner*, No. 02A01-9710-CV-00249, 1997 WL 796216 at *2 (Tenn. Ct. App. Dec. 30, 1997), *no perm. appl. filed*. *See also, e.g., Central Drug Store v. Adams*, 184 Tenn. 541, 201 S.W.2d 682 (Tenn. 1947). "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought to be harsh or unjust." *Tenpenny v. Tenpenny*, No. 01-A-01-9406-CV-00296, 1995 WL 70571 at *6 (Tenn. Ct. App. Feb. 22, 1995), *Rule 11 appl. perm. appeal denied July 3, 1995*. The record on appeal reveals no fraud or mistake and, therefore, we must interpret and enforce the contract as written.

11

The Rules and Regulations clearly and unambiguously provide that if either party "elect[s] to arbitrate a claim, the electing party must notify the other party in writing." This issue requires little discussion because, in the instant case, neither party notified the other of an election to arbitrate. As such, the arbitration clause in the Rules and Regulations never was triggered and, therefore, does not apply in this case. The Trial Court had jurisdiction and properly exercised it. This issue is without merit.

We next consider whether the Trial Court erred in granting summary judgment to SunTrust as to the complaint. As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (*citing Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

* * *

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the

manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address whether the Trial Court erred in holding that the Account was joint with a right of survivorship. As pertinent, Tenn. Code Ann. § 45-2-703 provides:

(c) As used in subsections (c)-(f), "multiple-party deposit account" means a deposit account, including a certificate of deposit, established in the names of, payable to, or in form subject to withdrawal by two (2) or more natural persons, or any of them, including, but not limited to, an account of the type described in subsection (a).

(d)(1) When opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents that enable the depositor to designate ownership interest therein in terms substantially similar to the following:

13

(A) Joint tenants with right of survivorship;
(B) Additional authorized signatory; and
(C) Other deposit designations that may be acceptable to the bank.

(2) Account documents which enable the depositor to indicate the depositor's intent of the ownership interest in any multiple-party deposit account may include any of the following:

(A) The signature card;
(B) The deposit agreement;
(C) A certificate of deposit;
(D) A document confirming purchase of a certificate of deposit; or
(E) Other documents provided by the bank or deposit institution that indicate the intent of the depositor.

(e) Accounts described in subsection (c) shall establish the following interests:

(1) A designation of joint tenants with right of survivorship, or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor;

(2) The designation of a person as an additional authorized signatory, or substantially similar language, shall be conclusive evidence in any action or proceeding that the person so designated has power of attorney with respect to the account and is not an owner of the account;

(3) Other designations acceptable to the bank shall establish interests in accordance with their respective provisions; and

(4) In the absence of any specific designation in accordance with subsection (d), property held under the title, tenancy by the entireties, carries a right of survivorship; property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated. Any other person to whose order the accounts or certificate of deposit is subject shall be presumed to have power of attorney with respect to the account or certificate of deposit and not to be an owner of the account or certificate of deposit. The presumptions may be rebutted by clear and convincing evidence presented in the course of legal or equitable proceedings. Final judicial determinations contrary to such presumptions shall not affect a bank's earlier payment in accordance therewith, or the limitations on liability conferred by § 45-2-707(a) and (b).

Tenn. Code Ann. § 45-2-703 (Supp. 2015).

The contract created by the signature card and the Rules and Regulations clearly and unambiguously provides that SunTrust Bank "will treat all Joint Accounts, unless otherwise indicated on the Bank's records, as 'joint tenants with right of survivorship' for all purposes, including, but not limited to writs, levies, setoffs, and determination of ownership upon death." Further, the Rules and Regulations clearly and unambiguously provide that the Account owners "are not permitted to change the account ownership to anything other than a 'joint tenants with right of survivorship,' including 'tenants by the entirety' or 'tenants in common' without the Bank's approval." As such, we must give effect to the parties' intent.

SunTrust complied with Tenn. Code Ann. § 45-2-703 by providing a signature card and a deposit agreement, the Rules and Regulations, that enabled the depositors, Mildred E. Best and Best, to designate ownership interest in the Account, a joint account. Under Tenn. Code Ann. § 45-2-703(e)(1) the designation of the Account as joint tenants with right of survivorship "shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor." Tenn. Code Ann. § 45-2-703(e)(1) (Supp. 2015).

Best argues in her brief on appeal that the Account was not a joint account, but rather was a power of attorney account. She bases this assertion upon the title of the Account, which states "Mildred E. Best POA." Best is mistaken. Although Best asserts that she was instructed by SunTrust to "affix [her] signature, in use of this account with the identifier 'POA,'" the signature card itself belies this assertion. Best did not even sign the signature card with the designation 'POA.' Instead, Best signed the signature card solely in her own name. In addition, the record on appeal is devoid of any evidence that Mildred E. Best ever executed a power of attorney naming Best as her attorney-in-fact. Furthermore, the Rules and Regulations clearly and unambiguously provide that Best was "not permitted to change the account ownership to anything other than a 'joint tenants with right of survivorship,' . . . without the Bank's approval" and that SunTrust "will treat all Joint Accounts, unless otherwise indicated on the Bank's records, as 'joint tenants with right of survivorship' for all purposes, . . . ." The fact that the Account title was written as "Mildred E. Best POA," does not show that the Bank had approved a change in account ownership or that the Bank was designating the Account as anything other than a joint account with right of survivorship.

Best also asserts that the Account was a power of attorney account because the Rules and Regulations allow for use of a power of attorney. In pertinent part, the Rules and Regulations provide that if a depositor "wish[es] to grant an individual power of attorney over your Account, we make available our SunTrust Specific Durable Power of Attorney, which is available at any SunTrust Branch location," and that "[t]he Bank may in its sole discretion refuse to honor or accept a power of attorney to open, close, deposit,

15

or withdraw funds from your Account or to supply endorsements on checks or any other items or to take any other action with respect to your Account," may "either accept or refuse to honor any power of attorney you grant and with no liability to you," and "within its discretion may not recognize a power of attorney given by one owner of a Joint Account without the consent of the other Joint Account holder(s)."

The fact that the Rules and Regulations recognize that in certain circumstances a power of attorney may be exercised with regard to an account, simply does not provide support for Best's argument that the Account was not a joint account with survivorship. As discussed above, the contract shows that SunTrust treats all joint accounts as joint with right of survivorship unless SunTrust approved a change in ownership, and the record is devoid of evidence that SunTrust approved a change in ownership. Furthermore, the record on appeal is devoid of any evidence showing Mildred E. Best ever executed a SunTrust Specific Durable Power of Attorney or that Mildred E. Best ever executed any power of attorney in favor of Best.

SunTrust made a properly supported motion for summary judgment, and Best has pointed to nothing in the record showing that there is a genuine disputed issue of material fact with regard to the ownership of the Account. As such, SunTrust was entitled to summary judgment. We, therefore, affirm the grant of summary judgment with regard to the complaint.[1]

We next consider whether the Trial Court erred in granting summary judgment to SunTrust as to Best's counterclaim for negligent misrepresentation. Our Supreme Court has instructed:

> "[T]o succeed on a claim for negligent misrepresentation, a plaintiff must establish 'that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information.' " *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)). "Tennessee has adopted Section 552 of the *Restatement (Second) of Torts* 'as the guiding principle in negligent misrepresentation actions against . . . professionals and

---

[1] We note that *Rye,* in addressing the change in Tennessee's summary judgment standard to the same "as in the federal system," may have limited the change to those situations "when the moving party does not bear the burden of proof at trial . . . ." *Rye*, 477 S.W.3d at 264. As to the complaint, SunTrust did bear the burden of proof at trial. Given the record as presented to us, the summary judgment result would be the same no matter which of the two standards was used as SunTrust satisfied its burden under both the pre and post *Rye* standards.

business persons.' " *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (quoting *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991)). The Restatement (Second) provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552(1) (1977).

*Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011).

Best argues in her brief on appeal that SunTrust negligently represented to her that "the account to which she entered with Mildred E. Best was limited to the duties and responsibilities of attorney-in-fact granted by a power of attorney . . . ," induced Best to rely upon the "representation of her limited responsibilities and duties as attorney-in-fact under the Power of Attorney . . . ," and enabled Best "to undertake these duties, without her intending or being aware of 'joint ownership' of the subject account . . . ." Best, however, admitted that she signed the signature card which acknowledges that Best received a copy of the Rules and Regulations, and, as discussed more fully above, the contract created by the signature card and Rules and Regulations is clear and unambiguous with regard to ownership of the Account.

In the instant case, the Trial Court granted SunTrust summary judgment on the counterclaim after finding that Best, who had the burden of proof at trial on her counterclaim, had "not presented any testimony or evidence of any kind to support her contention that SunTrust negligently misrepresented the nature of the account when she opened it," and that Best "could not articulate any damages she sustained as a result of the alleged misrepresentation."

The record on appeal reveals that Best can point to no misrepresentation that SunTrust made to her. In her deposition, Best testified that the signature card for the Account contained her signature, but Best could not recall executing that document. In fact, Best testified that she could not even recall opening the Account. As discussed more fully above, the contract created by the signature card and Rules and Regulations clearly and unambiguously provided that the Account was a joint account with

survivorship. Best admitted that she signed the signature card, which states that Best acknowledged receipt of the Rules and Regulations.

Best argues in her brief on appeal that a genuine disputed issue of material fact exists because in her affidavit Best stated that SunTrust instructed her to "affix [her] signature, in use of this account with the identifier 'POA.'" This assertion, however, is directly contrary to the later testimony Best gave during her deposition wherein she testified that she could not recall going to the bank, could not recall opening the Account, and could not recall executing the signature card. As Best could recall nothing about opening the Account, her assertion that SunTrust instructed her to "affix [her] signature, in use of this account with the identifier 'POA'" defies logic.

With regard to contradictory statements, this Court has explained:

It is a rule of law in this state that contradictory statements of a witness in connection with the same fact have the result of "cancelling each other out." *DeGrafenreid v. Nash. Ry. & Lt. Co.*, 162 Tenn. 558, 39 S.W.2d 274 (1931); *Johnson v. Cincinnati N.O. & T.P. Ry. Co.*, 146 Tenn. 135, 240 S.W. 429 (1922); *Donaho v. Large*, 25 Tenn. App. 433, 158 S.W.2d 447 (1941); *Southern Motors, Inc. v. Morton*, 25 Tenn. App. 204, 154 S.W.2d 801 (1941); *Nashville & American Trust Co. v. Aetna Cas. & Sur. Co.*, 21 Tenn. App. 366, 110 S.W.2d 1041 (1937).

The question here is not one of the credibility of a witness or of the weight of evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other, there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide it either way.

*Johnson, supra*, 146 Tenn. At 158, 240 S.W. at 436. As can be seen from the quoted paragraph, this rule of "cancellation" is usually stated as applying only when the inconsistency in the witness's testimony is unexplained and when neither version of his testimony is corroborated by other evidence.

*Taylor v. Nashville Banner Publ'g Co.*, 573 S.W.2d 476, 482-83 (Tenn. Ct. App. 1978).

18

Best provided no explanation for the discrepancy between her affidavit and her deposition testimony other than to assert in her brief on appeal: "there is no contradiction between [Best's] deposition and affidavit, only statements of lack of memory." We find this to be no explanation at all. Given the lack of any explanation for the discrepancy, Best's assertion that she remebers that SunTrust instructed her to "affix [her] signature, in use of this account with the identifier 'POA'" is cancelled out by her later testimony that she could not recall even going to the bank, could not recall opening the Account, and could not recall executing the signature card.

Best argues in her brief on appeal that the Trial Court improperly weighed the evidence. We agree with the assertion that the Trial Court is not to weigh the evidence at the summary judgment stage. *E.g., Tatham v. Bridgeston Americas Holding, Inc.*, 473 S.W.3d 734, 753 (Tenn. 2015). In this case, however, the only material evidence which could have been weighed is the conflicting evidence from Best's affidavit and deposition as discussed above. As we have found that Best's contradictory statements cancelled each other out, there was nothing left to weigh. Best also asserts in her brief on appeal that the Trial Court also improperly weighed the evidence contained in the affidavit of Gary Best. A careful review of Gary Best's affidavit, however, shows no evidence material to the issue of whether SunTrust negligently misrepresented to Best the ownership status of the Account. As such, there was nothing for the Trial Court to have improperly weighed.

Best has not pointed to any evidence of a specific misrepresentation made by SunTrust that the ownership of the Account was anything other than joint with right of survivorship. As such, Best has failed to demonstrate that there is a genuine disputed issue of material fact with regard to this issue. SunTrust made a properly supported motion for summary judgment that negated an essential element of Best's claim, and Best failed to respond by showing that there is a genuine issue for trial.

The Trial Court also found that Best could not articulate any damages she sustained as a result of the alleged negligent misrepresentation. Best testified during her deposition that at that time she did not have a copy of her credit report and when asked if she had obtained one recently, Best stated: "I don't remember." Best could not recall if she even had seen her credit report within the last year. When asked how SunTrust had harmed her credit, Best stated: "I don't have specifics on the credit, not seeing the report. . . . I don't have that information available today." Best never provided to the Trial Court any "specifics on the credit . . ." in response to SunTrust's motion for summary judgment.

19

Best acknowledged in her brief on appeal that our Supreme Court changed the summary judgment standard in Tennessee in *Rye v. Women's Care Cntr. of Memphis, MPLLC*, which was filed a few weeks after the parties argued the motion for summary judgment but before the Trial Court entered its order. *Rye*, 477 S.W.3d 235. Best argued in her brief on appeal that she justifiably relied upon the pre-*Rye* standard "when not asking that the hearing date be changed so that [Best] could ensure receipt of her credit report." Best asserted in her brief that her representation that she "was in the process of requesting a credit report form [sic] the reporting agencies," would be "sufficient to survive summary judgment under the summary judgment standard [pre-*Rye*]." Best is mistaken.

First, although Best asserts that during the hearing on the motion for summary judgment "it was explained" to the Trial Court that Best was "in the process of requesting a credit report form [sic] the reporting agencies," the record on appeal does not support this assertion. The record does not contain a transcript of the hearing on the motion for summary judgment. In its brief on appeal, SunTrust denies that Best's counsel made such a statement to the Trial Court during the hearing. Without a transcript of the hearing, we are left with nothing to prove or disprove this assertion. Furthermore, Best has made no showing as to why she was unable to obtain her credit report prior to the hearing on the motion for summary judgment, and the record is devoid of anything showing that Best took any action after our Supreme Court released *Rye*, to at least attempt to submit more evidence to the Trial Court to oppose the motion for summary judgment or to obtain more time in which to do so.

Furthermore, we disagree with Best's argument that pre-*Rye* her assertions would have been sufficient to withstand summary judgment. This Court has repeatedly, and well before our Supreme Court released its opinion in *Rye*, cautioned litigants to take motions for summary judgment seriously and fully oppose them before they are granted. *See, e.g., Discover Bank Issuer of Discover Card v. Howell*, No. M2013-00485-COA-R3-CV, 2013 WL 6021462, at *3 (Tenn. Ct. App. Nov. 8, 2013), *no appl. perm. appeal filed* (discussing failure to file a response to statement of material facts and stating: "Howell filed a *response* to the motion for summary judgment stating his opposing to the motion, yet, he failed to *demonstrate* that the facts Plaintiff relied upon in making the motion for summary judgment were, in fact, disputed."); *Elliot v. Life of the South Ins. Co.*, 296 S.W.3d 64, 70 (Tenn. Ct. App. 2008) (discussing failure to respond to summary judgment motions and stating: "A plaintiff cannot sit idly by when a motion for summary judgment is filed. Tennessee case law provides that '[t]he nonmoving party must fully oppose a motion for summary judgment before it is granted . . . .'" (quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 121 (Tenn. Ct. App. 2003))); *Chambliss v. Stohler*, 124 S.W.3d 116, 121 (Tenn. Ct. App. 2003) (stating "Summary judgment standards are both well settled, as discussed above, and difficult for the moving party to meet. Parties on both sides of a

20

summary judgment motion must heed those standards. The non-moving party must fully oppose a motion for summary judgment before it is granted rather than rely on Rule 59.04 to overturn a summary judgment after only weakly opposing the motion.").

As pertinent to this issue, Rule 56.06 clearly and unambiguously provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her respone, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Tenn. R. Civ. P. 56.06.

SunTrust made a properly supported motion for summary judgment, and Best failed to demonstrate any genuine disputed issue of material fact with regard to whether she suffered damages as a result of the alleged misrepresentation. Thus, SunTrust negated another essential element of Best's claim for negligent misrepresentation. Given all this, we find no error in the Trial Court's grant of summary judgment to SunTrust on Best's counterclaim.

Finally, we consider whether the Trial Court erred in awarding attorney's fees allegedly in excess of those allowed under the SunTrust Rules and Regulations. In pertinent part, the Rules and Regulations provide:

You are liable for all amounts charged to your Account, whether by offset, overdraft, lien or fees. If we take court action or commence an arbitration proceeding against you to collect such amounts, or if you elect arbitration of a collection action we have brought against you in court, you will also be liable for court or arbitration costs, other charges or fees, and attorney's fees up to 25 percent, or an amount as permitted by law, of the amount owed to us. . . .

The Trial Court awarded SunTrust a judgment of $379.60 plus post-judgment interest and then awarded SunTrust attorney's fees in the amount of $7,500.00. The contract created by the signature card and the Rules and Regulations clearly and unambiguously provides that attorney's fees may be awarded in an amount "up to 25 percent, or an amount as permitted by law, of the amount owed to [SunTrust]." The

attorney's fees awarded in the amount of $7,500.00 far exceeds 25 percent of the amount owed to SunTrust.

The clause "or an amount as permitted by law" is not intended to allow for an award of attorney's fees in excess of the contractually allowed amount of "up to 25 percent . . . of the amount owed to [SunTrust]." Rather, this clause clearly is intended to address circumstances wherein an award of attorney's fees in the contractually allowed amount of "up to 25 percent . . . of the amount owed to [SunTrust]" exceeds the amount permitted by law. In the case now before us, an award of attorney's fees in the amount of 25 percent of the amount owed to SunTrust runs afoul of no Tennessee law. As such, we must interpret the clear and unambiguous language contained in the contract and give effect to the parties' intent. To hold as the Trial Court did and as SunTrust requests would render the phrase "up to 25 percent" meaningless. To give meaning to both phrases, 25 percent must be the cap on attorney's fees unless the law permits only some amount lower than 25 percent under the facts of the specific case.

Just as Best must live with the Rules and Regulations unfavorable to her, so must SunTrust. We, therefore, modify the award of attorney's fees to comport with the contract created by the signature card and the Rules and Regulations and remand this case to the Trial Court for entry of an order awarding attorney's fees in an amount up to 25 percent of the amount owed to SunTrust.

## Conclusion

The judgment of the Trial Court granting summary judgment to SunTrust is affirmed. The judgment of the Trial Court awarding attorney's fees to SunTrust is modified and affirmed as modified, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and collection of the costs below. The costs on appeal are assessed one-half against the appellant, Angela Christina Best and her surety; and one-half against the appellee, SunTrust Bank.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

22